STATE OF NEBRASKA, APPELLEE, V.
GLEN M. PETERS, APPELLANT.
622 N.W.2d 918

Filed March 16, 2001.   No. S-00-404.

David T. Schroeder, of Kelly & Schroeder, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Following a bench trial in district court, Glen M. Peters appeals his conviction of being a felon in possession of a firearm under Neb. Rev. Stat. § 28-1206 (Reissue 1995). Before 1995, § 28-1206 did not apply to firearms with barrels in excess of 18 inches in length. But in 1995, § 28-1206 was amended to apply to all firearms. Peters argues that at the time of his previous convictions under § 28-1206, he was allowed to possess a firearm with a barrel longer than 18 inches and that his conviction under

the amended § 28-1206, which now forbids possession of any firearm, violates the Ex Post Facto Clauses of the U.S. and Nebraska Constitutions. Peters also argues that the district court should have sustained his motion to suppress evidence because the affidavit in support of the warrant and evidence at trial did not support a nighttime search or show the credibility of a citizen informant.

We determine that although Peters' previous felonies occurred before § 28-1206 was amended, there was no violation of the Ex Post Facto Clauses because § 28-1206 was not applied retroactively and was not further punishment for the earlier convictions. We further determine that the affidavit in support of the search warrant supported the issuance of a warrant to be served without notice and at any time. Accordingly, we affirm.

## BACKGROUND

On March 13, 1999, Sgt. Richard N. Miller prepared an affidavit in support of a search warrant to be executed on Peters' residence. The affidavit stated that on March 8, 1999, Merrick County Deputy Sheriff Brian M. Stobbe was in Palmer, Nebraska, investigating a dogbite. The affidavit stated that while conducting the investigation, a citizen informant informed Stobbe that based on the informant's personal knowledge, Peters had various items of stolen property, which the informant described in detail. These stolen items included tools. The affidavit stated that the informant also told Stobbe that Peters had marijuana, that he was selling various controlled substances, and that he had various weapons. The informant told Stobbe that one of Peters' "hobbies" was to go out on the front porch and shoot a high-powered rifle at a stop sign located on the northwest corner of Highway 92 and Worms Road. The affidavit stated that Miller had further been advised that Peters would not hesitate to shoot at law enforcement officers.

In the affidavit, Miller stated that he verified that tools had been stolen from a construction site on Worms Road and that during the course of his duties, he had observed where the stop sign described by the informant had been shot. Miller stated that a background check showed that Peters was a convicted felon and had been previously charged with being a felon in posses-

sion of a firearm and with giving false information on an application for a handgun permit. In addition, Peters had a criminal history of discharging firearms within city limits, kidnapping, and false imprisonment. Miller stated in the affidavit that he has known the informant for approximately 8 years and that the informant had given reliable information in the past, including one time when Miller was able to obtain a search warrant based on information that later proved to be reliable. Miller then stated that based on his training and experience, he was aware that persons involved in drug- and weapons-related crimes often arm themselves with weapons and sometimes use those weapons against police and others. Miller stated that such people would also conceal or destroy evidence if given time and that very important factors in raids involving weapons and drugs are surprise and speed. Miller stated that identification eliminates surprise and provides persons within a residence time to take actions that would require reaction by officers. Miller then requested a no-knock search warrant to be served at any time.

The county court issued a warrant that could be served at any time and without notice. Five days later, on March 18, 1999, at 5:39 a.m., the warrant was executed. During the search, law enforcement officers seized four firearms with barrel lengths over 18 inches. As a result, Peters was charged by information with being a felon in possession of a firearm. Peters was also charged with two counts of possession of stolen property, which were later dismissed.

Peters filed a demurrer, plea in abatement, and motion to quash, all of which contended that the charge of being a felon in possession of a firearm violated his rights under the Ex Post Facto Clauses of the U.S. and Nebraska Constitutions. Peters also filed a motion to suppress.

Stobbe, Miller, and Peters testified at the hearing on the motion to suppress. Stobbe testified that he had not had any prior contact with the informant. Stobbe did not try to independently verify what the informant told him, but instead gave all the information to Miller. Miller testified that he had known the informant for 8 years and that he spoke personally with the informant before executing the search warrant. When asked about the informant's reputation in the community for truthful-

ness and veracity, Miller responded that the informant had a mixed reputation for truthfulness, with some people finding him very likeable and truthful, while others disliked him and would call him a liar. Miller testified that he asked for a no-knock warrant that could be served at any time due to the high probability that Peters had weapons in his house and the possibility that he could use those weapons against police officers. Miller stated that he was also concerned that evidence could be disposed of or hidden.

Miller admitted that he waited 5 days after getting the information on Peters to ask for a warrant. Miller stated that the delay was due to other responsibilities within his office. Miller also admitted that while he received the warrant on March 13, 1999, he did not execute it until March 18. Miller testified that the reason for the delay was because his office was getting the State Patrol involved in the case. Miller testified that he saw no urgency that the evidence would be removed or hidden during this timeframe. Rather, Miller stated that his concern was that the warrant should be executed before Peters became aware of it. Miller stated that he was concerned that if Peters was not surprised, a weapon could be used against the officers.

Peters testified that he had previously been convicted of a felony in 1976 for burglary and another in 1989 for being a felon in possession of a firearm. (The record shows that although Peters was charged in 1976, he was convicted in 1977.) Peters admitted that he had previously been charged with other crimes.

The district court overruled the motion to suppress, having earlier overruled the demurrer, motion to quash, and plea in abatement. At the arraignment, Peters elected to stand mute, and the court entered a plea of not guilty on his behalf. A bench trial was held, during which Peters renewed the objections made in his previous motions. At the end of the State's evidence, Peters made a motion to dismiss because the firearms had barrels over 18 inches in length and his prior convictions took place during a time when a person convicted of a felony could possess firearms with barrels over that length. Peters did not present any evidence, and the district court found him guilty and sentenced him to incarceration for 12 months to 3 years. Peters appealed, and we granted his motion to bypass.

## ASSIGNMENTS OF ERROR

Peters assigns, rephrased, that the district court erred in overruling his demurrer, plea in abatement, motion to quash, and motion to suppress.

## STANDARD OF REVIEW

■ A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999).

■ To the extent questions of law are involved, an appellate court is obligated to reach conclusions independent of the decisions reached by the courts below. *State v. Burdette*, 259 Neb. 679, 611 N.W.2d 615 (2000); *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000).

## ANALYSIS

### Ex Post Facto Clauses

Peters contends that at the time of his previous felony convictions, § 28-1206 allowed him to possess a firearm with a barrel longer than 18 inches and that thus, his conviction under § 28-1206 as amended, which now forbids possession of any firearm, violates the Ex Post Facto Clauses of the U.S. and Nebraska Constitutions. Before 1995, § 28-1206 (Reissue 1989) stated: "(1) Any person who possesses any firearm with a barrel less than eighteen inches in length . . . and who has previously been convicted of a felony or who is a fugitive from justice commits the offense of possession of firearms by a felon or a fugitive from justice." Operative September 9, 1995, § 28-1206 was amended to read: "(1) Any person who possesses any firearm . . . and who has previously been convicted of a felony or who is a fugitive from justice commits the offense of possession of a deadly weapon by a felon or a fugitive from justice."

■ The U.S. Const. art. I, § 10, and Neb. Const. art. I, § 16, provide that no ex post facto law shall be passed. Under this pro-

hibition, a legislature may not enact any law which imposes a punishment for an act which was not punishable at the time it was committed. *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986). Furthermore, a law which purports to apply to events that occurred before the law's enactment, and which disadvantages a defendant by creating or enhancing penalties that did not exist when the offense was committed, is an ex post facto law. *State v. Gray*, 259 Neb. 897, 612 N.W.2d 507 (2000).

The overwhelming majority of courts, however, hold that a conviction under a statute forbidding possession of a firearm by a person convicted of a felony does not violate the Ex Post Facto Clause even when the felony or felonies for which the defendant was convicted took place before the statute was enacted. See, *U.S. v. Mitchell*, 209 F.3d 319 (4th Cir. 2000) (citing cases); *U.S. v. Brady*, 26 F.3d 282 (2d Cir. 1994); *Finley v. State*, 282 Ark. 146, 666 S.W.2d 701 (1984); *Landers v. State*, 250 Ga. 501, 299 S.E.2d 707 (1983); *State v. Swartz*, 601 N.W.2d 348 (Iowa 1999); *State v. Williams*, 358 So. 2d 943 (La. 1978); *People v Tice*, 220 Mich. App. 47, 558 N.W.2d 245 (1996); *Dodson v. Com.*, 23 Va. App. 286, 476 S.E.2d 512 (1996).

Likewise, it has been held that the Ex Post Facto Clause is not violated when, at the time of the defendant's underlying felony conviction, the statute prohibited possession of particular kinds of firearms but the defendant is convicted under an amendment to the statute that prohibits the possession of any firearm. *People v. Mills*, 6 Cal. App. 4th 1278, 8 Cal. Rptr. 2d 310 (1992); *State v. Vainio*, 466 A.2d 471 (Me. 1983); *Hand v. State*, 107 Nev. 577, 816 P.2d 468 (1991); *State v. Lamb*, 110 Or. App. 146, 822 P.2d 143 (1991); *State v. Schmidt*, 100 Wash. App. 297, 996 P.2d 1119 (2000). See, also, *State v. Olvera*, 191 Ariz. 75, 952 P.2d 313 (Ariz. App. 1997) (not ex post facto violation when amended statute increased number of crimes constituting felonies). Generally, such amendments are viewed not as further punishment for the underlying felony or felonies, but as a future prohibition on a felon's conduct. See *id*.

Peters bases his argument primarily on *U.S. v. Davis*, 936 F.2d 352 (8th Cir. 1991), and the dissenting opinion in *People v. Mills, supra*, contending that the amendment to § 28-1206 acted to retroactively punish him for his 1977 and 1989 felony con-

victions. In *Davis*, the Eighth Circuit Court of Appeals discussed the application of a Minnesota statute that lengthened the time prohibiting felons from possessing firearms and its effect on a restoration of civil rights law. The court concluded that an application of the amendment to a conviction that took place before the amendment increased the defendant's punishment by delaying restoration of his or her civil rights. *Davis*, however, did not involve a conviction for possession of a firearm by a felon. Thus, the Iowa Supreme Court determined that *Davis* was inapplicable in cases involving statutes forbidding possession of a firearm by a felon. *State v. Swartz, supra.* See, also, *U.S. v. O'Neal*, 180 F.3d 115 (4th Cir. 1999) (disagreeing with *Davis*); *Forster v. Pierce County*, 99 Wash. App. 168, 991 P.2d 687 (2000) (concluding that *Davis* court's discussion of Minnesota law was dictum and disagreeing with case to extent that it found Minnesota law applied to past conduct).

We conclude that *Davis* is neither persuasive nor applicable to Peters' case. Instead, we agree with the overwhelming majority of jurisdictions that hold the Ex Post Facto Clauses are not violated under circumstances such as those in Peters' case. Although § 28-1206 as amended applies to Peters only because he has the status of a convicted felon and he acquired that status before the amendment, § 28-1206 applies to events that occur after its effective date. See *People v. Mills, supra.* In this case, the event, possession of a firearm by a person convicted of a felony, took place after the effective date of the amendment, and the amendment was not retroactive. See *id.*

Neither was the amendment to § 28-1206 an increase in punishment for Peters' prior felonies. Nothing in § 28-1206 indicates that it was enacted as a form of retroactive punishment. Rather, § 28-1206 is located in the statutory sections defining offenses against public health and safety. As one court has noted, a statutory amendment prohibiting felons from possessing any firearm may be enacted " 'to lessen "a high potential of danger to the public" and to reduce the "probability that the convicted individual would continue his criminal activity." . . .' " *State v. Vainio*, 466 A.2d at 475. The court further stated " '[t]he Legislature could justifiably conclude there was a need for [more] gun control legislation in the case of convicted crimi-

nals.' " *Id.* See, also, *State v. Olvera, supra* (overview of legislative scheme showed intent to restrict firearm possession to protect public instead of to punish for past offense).

■ We hold that § 28-1206 punishes Peters for the specific conduct of possession of a firearm by a person previously convicted of a felony. It does not punish Peters for the underlying felony. Peters' status as a felon makes the law applicable to him, but the legal consequences of his past conduct were not changed. Thus, the crime for which Peters was punished was not for the earlier felonies, but for the new and separate crime of which the prior felony convictions are an element. See, *People v. Mills*, 6 Cal. App. 4th 1278, 8 Cal. Rptr. 2d 310 (1992); *Hand v. State*, 107 Nev. 577, 816 P.2d 468 (1991); *People v Tice*, 220 Mich. App. 47, 558 N.W.2d 245 (1996); *Dodson v. Com.*, 23 Va. App. 286, 476 S.E.2d 512 (1996). Accordingly, we determine that no violation of the Ex Post Facto Clause occurred in this case.

## MOTION TO SUPPRESS

■ Peters next contends that the trial court erred in overruling his motion to suppress because the affidavit in support of the search warrant did not show a factual basis for a nighttime search. In particular, Peters argues that the affidavit did not support any urgency permitting a nighttime search and points to the fact that the warrant was not executed until 5 days after it was issued. Neb. Rev. Stat. § 29-814.04 (Reissue 1995) provides in part:

> The warrant shall direct that it be served in the daytime unless the magistrate or judge is satisfied that the public interest requires that it should not be so restricted, in which case the warrant may direct that it may be served at any time. The warrant shall designate the magistrate or judge to whom it shall be returned. For purposes of this section, daytime shall mean the hours from 7 a.m. to 8 p.m. according to local time.

We have said that " ' "[i]f the affidavit, read in a common sense manner and as a whole reasonably supports the inference that the interests of justice are best served by the authorization of nighttime service, provision for such service in the warrant is proper." ' " *State v. Fitch*, 255 Neb. 108, 114, 582 N.W.2d 342, 347 (1998), quoting *State v. Paul*, 225 Neb. 432, 405 N.W.2d 608 (1987).

■ In executing a warrant, Neb. Rev. Stat. § 29-815 (Reissue 1995) requires that it be executed and returned within 10 days after its date. *State v. Swift*, 251 Neb. 204, 556 N.W.2d 243 (1996). We have also stated, however, that "it does not follow that compliance with the legislatively imposed time limit will in every instance result in a valid search." *Id.* at 211, 556 N.W.2d at 249. Whether a delay in executing a search warrant is unconstitutional depends on whether the probable cause recited in the affidavit still exists at the time of the execution of the warrant— that is, whether it is still likely that the items sought will be found in the place to be searched. *Id.*

Miller's affidavit stated that based on his training and experience, persons involved in drug- and weapons-related crimes often arm themselves with weapons and sometimes use those weapons against police and others. The affidavit stated that such people would also conceal or destroy evidence if given time and that very important factors in raids involving weapons and drugs are surprise and speed. The affidavit also stated that identification eliminates surprise and provides persons within a residence time to take actions that would require reaction by officers. The affidavit further stated that Miller had been advised that Peters would not hesitate to shoot at law enforcement officers. Thus, the affidavit provided information showing that the execution of the warrant at a time when surprise and speed could be accomplished, such as at night and without knocking, could serve to protect the safety of the officers involved.

Although the warrant was not executed until 5 days after it had been issued, the record shows that the probable cause recited in the affidavit still existed at the time of the execution of the warrant. The concern in this case was not of destruction of contraband. Rather, it was for the safety of law enforcement officers involved. Thus, although Miller testified that there was no urgency in executing the warrant immediately upon receiving it, there was some concern for the officers' safety. Further, the record indicates that the time taken between receiving and executing the warrant was necessary in order for the local law enforcement officers to arrange for the involvement of the State Patrol in the matter. We determine that the delay of 5 days in executing the warrant did not act to make the search unconstitu-

tional. Accordingly, we conclude that the interests of justice are best served by the authorization of nighttime service.

Peters' final contention is that the trial court erred in overruling his motion to suppress because the affidavit in support of the search warrant did not establish the informant's credibility. Peters further contends that evidence at the suppression hearing showed that the informant was reputed to be dishonest.

Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *State v. Edmonson*, 257 Neb. 468, 598 N.W.2d 450 (1999).

Although the affidavit labels the informant as a citizen informant, it does not set out facts to show why that label was used. The status of a citizen informant cannot attach unless the affidavit used to obtain a search warrant affirmatively sets forth circumstances from which the informant's status as a citizen informant can reasonably be inferred. *Id.* Neither does the affidavit set forth any specific statements the informant made against his or her penal interest.

The affidavit did, however, provide information regarding the credibility of the informant. Although testimony at the suppression hearing indicated that the informant's reputation for honesty was mixed, the affidavit stated that Miller had known the informant for 8 years and that the informant had provided law enforcement with reliable information in the past. Further, the affidavit showed the manner in which an independent investigation verified information provided by the informant. Under these circumstances, we conclude that the affidavit sufficiently established the informant's credibility to support the issuance of a search warrant.

## CONCLUSION

We hold that although Peters' previous felonies occurred before § 28-1206 was amended, there was no violation of the Ex

Post Facto Clauses because § 28-1206 was not applied retro-actively and was not further punishment for the earlier convictions. We further hold that the affidavit in support of the search warrant supported the issuance of a warrant to be served without notice and at any time. Accordingly, we affirm.

AFFIRMED.