STATE OF NEBRASKA, APPELLEE, V.
STANLEY SPIDEL, APPELLANT.
634 N.W.2d 825

Filed October 23, 2001. No. A-00-1268.

Dennis R. Keefe, Lancaster County Public Defender, and Webb E. Bancroft for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

CARLSON, Judge.

## I. INTRODUCTION

Stanley Spidel appeals from an order of the district court for Lancaster County, Nebraska, finding Spidel guilty of two counts of visual depiction of sexually explicit conduct of a child and sentencing him to two consecutive terms of imprisonment of 2 to 5 years in the Department of Correctional Services. For the reasons set forth below, we affirm.

## II. BACKGROUND

On March 1, 1999, the Lincoln Police Department received a telephone call from a man identifying himself as Thomas McFarland. McFarland spoke with Officer Kerry Crosby, an investigator with the family crimes unit. In that conversation, McFarland told Crosby that Spidel was his employer and that Spidel had a business involving unloading trucks at Fleming Foods. McFarland stated that about 1 week previously, he had gone to Spidel's residence in Lincoln, Nebraska, to pick up his paycheck. McFarland stated that while there, Spidel showed him two photographs of two females who were nude from the waist up. McFarland told Crosby that Spidel stated that the two females were his daughter's 15-year-old babysitters. McFarland also told Crosby that Spidel had stated that one of the photographs was taken with a digital camera and that Spidel had loaded the photograph onto his personal computer. The other photograph was a Polaroid photograph.

McFarland gave Crosby his own address and told Crosby that he was currently living with his mother. When asked where he could be reached, McFarland stated that he did not have a telephone, but that he could be reached at "corrections" since he was about to serve time in the county jail for a "DWI sentence or a driving while suspended sentence or something like that." McFarland also gave Crosby his date of birth.

In an affidavit subsequently prepared by Crosby, Crosby stated:

> KERRY D. CROSBY, being first duly sworn upon oath, deposes and says that he is a police officer of the City of

Lincoln, Lancaster County, Nebraska. Affiant further states that I have a witness, Thomas McFarland, who advised this officer that approximately one week ago he went to the residence of his employer, Stanley Spidel, to pick up his paycheck. That the Spidel residence is located . . . in Lincoln, Lancaster County, Nebraska. While at the Spidel residence, Stanley Spidel showed him photos of two females in a partial state of nudity. The females appeared to be approximately 13 - 15 years of age. Witness was informed by Spidel, the females were 15 year old babysitters of his daughter.

Your affiant was further advised by Mr. McFarland that Spidel told him that one of the photos was taken with a digital camera and loaded onto Spidel's personal computer. The other photo shown Mr. McFarland was a polaroid type photo.

Your affiant has investigated innumerable cases involving child pornography and knows from both personal experience in the investigation of these cases and training concerning the investigation of these child pornography cases that child pornographers frequently store their pornography on computers where they are later accessible and can be easily converted to digital storage both of a temporary and permanent nature. That often this pornography is stored on floppy discs and/or CD's [and] is exchanged with other people who collect or exchange child pornography. That based on my training and experience child pornographers often accumulate other documentary evidence such as catalogues, brochures, etc. all designed for the purchase and exchange of such pornographic material.

The above does constitute grounds of probable cause for the issuance of a Search Warrant to search the premises located at [Spidel's address] for the following items:

photographs depicting nude and partially nude young adolescent females located in the residence and/or stored on computer(s) owned by the suspect and found in the above described residence; any cameras or equipment which may be used to produce, generate or reproduce photographic

material including any digital flash storage contained therein and authorizing and directing seizure of the same.

On March 3, 1999, Crosby presented this affidavit to a Lancaster County Court judge. Officers executed the warrant on March 5 and seized several items, including a computer, a printer, a digital camera, a Polaroid camera, a tripod, several videotapes, and numerous photographs and negatives. A search of these items showed that Spidel had taken photographs of two girls, one age 15 and the other age 16.

In these photographs, the girls, L.A. and C.R., are shown in various stages of undress. While the girls are partially dressed in some of the photographs, the girls are completely nude in many of the photographs. In some of the photographs, the girls are shown nude from the waist up as well as nude from the waist down. The photographs show the girls from the front fully nude and from the rear fully nude in addition to showing the girls in such a way as to reveal their genitalia.

On August 5, 1999, the State filed a three-count information in Lancaster County District Court charging Spidel with two counts of visual depiction of sexually explicit conduct of a child pursuant to Neb. Rev. Stat. § 28-1463.03 (Reissue 1995) and one count of first degree sexual assault on a child pursuant to Neb. Rev. Stat. § 28-319 (Reissue 1995). The State subsequently dropped the first degree sexual assault charge against Spidel.

Visual depiction of sexually explicit conduct of a child is a Class III felony under § 28-1463.04 if the offense is a first offense and under Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2000), a Class III felony carries a sentence of 1 to 20 years' imprisonment, a $25,000 fine, or both. Additionally, conviction under § 28-1463.03 requires registration under the Sex Offender Registration Act, Neb. Rev. Stat. § 29-4001 et seq. (Cum. Supp. 2000).

On August 11, 1999, Spidel was arraigned, and Spidel entered not guilty pleas to both counts.

On February 25, 2000, Spidel filed an amended motion to suppress evidence. In Spidel's motion, he requested that all evidence seized from his home on or about March 5, 1999, be suppressed. Spidel alleged that the search of his residence was conducted in

violation of his rights guaranteed to him by the 4th and 14th Amendments to the U.S. Constitution; article I, § 7, of the Constitution of the State of Nebraska; and Nebraska statutes. Spidel also requested that he be permitted to make a preliminary showing through an offer of proof as to the statements and material omissions made by Crosby in his affidavit in reckless disregard of the truth.

A hearing on Spidel's motion was held on February 28, 2000. At that hearing, the court allowed Spidel to present evidence supporting Spidel's argument that Crosby's affidavit contained material, false statements, and/or omissions in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

At the hearing, Crosby testified that after McFarland called him and before he presented the affidavit for a search warrant, he reviewed certain computer screens made available at the police department. One of the screens Crosby reviewed was a personal information display screen for McFarland. Crosby testified that a personal information display screen is a standard screen in the police department's database which shows a person's name, address, date of birth, physical description, and present address or last known address where the person was contacted, as well as the person's previous address and other identifying characteristics. Crosby testified that he also reviewed the Lancaster County Sheriff's contact listing for McFarland, a citation and arrest display listing for McFarland, and a police department contact list.

Crosby testified that none of these documents corroborated the address McFarland relayed to him on the telephone. Furthermore, although McFarland told Crosby that he could reach him at "corrections" because he had to go to county jail to serve a driving under the influence of alcohol (DUI) sentence or driving under suspension (DUS) sentence, Crosby testified that he was unable to find any information suggesting that McFarland had recently been convicted of DUI or DUS in Lancaster County. Additionally, Crosby testified that the birth date McFarland gave Crosby was a couple of days off from the birth date listed for McFarland in police records.

At the hearing, Spidel contended that these omissions were material and that if the county judge had known of these

omissions, the warrant would not have been issued. In orders filed May 23 and June 6, 2000, the district court overruled Spidel's motion to suppress.

On June 19, 2000, Spidel waived his right to a jury trial and his right to a speedy trial. On July 17, a bench trial was held. The case was tried pursuant to a stipulation which states as follows:

1. On March 5, 2000 [sic], Investigator Kerry Crosby, Investigator Mark Unvert, and Sergeant Mark Merwick of the Lincoln Police Department executed a search warrant at the residence of Stanley Spidel . . . . Pursuant to the search warrant, officers seized a computer, computer scanner, numerous floppy discs, and a Minolta digital camera from the bedroom of the residence.

2. Investigator Ed Sexton of the Lincoln Police Department examined the computer and floppy discs. Inv. Sexton numbered each of the discs as he examined them. Discs 87, 88, and 89 contained photographs of two girls who appeared to be under the age of 18 years in various stages of dress. It also appeared that the photographs were taken at the residence of Spidel. Inv. Sexton compiled exact copies of these photographs onto one CD Rom disc for ease of viewing.

3. Copies of the photographs have been printed from the CD Rom prepared by Inv. Sexton. They are marked as Exhibits 1 through 3. Exhibit 1 contains photographs found on disc 87. Exhibit 2 contains photographs found on disc 88. Exhibit 3 contains photographs found on disc 89.

4. Each of the photographs on each computer disc were named on the disc as "Pic" followed by a specific number.

5. Inv. Crosby was able to determine the identity [of] the two girls in the above-mentioned photographs as [L.A.] and [C.R.].

6. The following is a list of photographs and the person depicted in each photograph:

Exhibit 1 (disc 87):
Pic 00001 - [L.A.]
Pic 00003 - [C.R.]
Pic 00004 - [L.A.] (left) and [C.R.] (right)
Pic 00005 - [L.A.] (left) and [C.R.] (right)

Pic 00006 - [L.A.] (left) and [C.R.] (right)
Pic 00007 - [L.A.] (left) and [C.R.] (right)
Pic 00008 - [L.A.] (left) and [C.R.] (right)
Pic 00009 - [L.A.] (left) and [C.R.] (right)
Pic 00010 - [C.R.]
Pic 00011 - [L.A.] (left) and [C.R.] (right)
Pic 00012 - [L.A.] (left) and [C.R.] (right)
Pic 00013 - [L.A.] (left) and [C.R.] (right)
Pic 00035 - [L.A.] (left) and [C.R.] (right)
Pic 00037 - [L.A.]
Pic 00045 - [C.R.]
Pic 00050 - [L.A.] and [C.R.]
Pic 00051 - [C.R.] (left) and [L.A.] (right)
Exhibit 2 (disc 88):
Pic 00048 - unknown which girl
Pic 00053 - [C.R.]
Exhibit 3 (disc 89):
Pic 00016 - [L.A.] (left) and [C.R.] (right)
Pic 00019 - [L.A.] (left) and [C.R.] (right)
Pic 00025 - [L.A.] (left) and [C.R.] (right)
Pic 00026 - [L.A.] (left) and [C.R.] (right)
Pic 00027 - [L.A.] (left) and [C.R.] (right)
Pic 00028 - [L.A.] (left) and [C.R.] (right)
Pic 00029 - [L.A.] (left) and [C.R.] (right)
Pic 00032 - [L.A.] (left) and [C.R.] (right)

The photographs contained in Exhibits 1 through 3 are fair and accurate depictions of the photographs found by Inv. Sexton on discs 87, 88, and 89.

7. Inv. Crosby interviewed [L.A.] on July 8, 1999. [L.A.] would testify that her date of birth is July 13, 1983. She knows the defendant, Stanley Spidel, and has babysat for his daughter in the past. [L.A.] would testify that Spidel took the photographs in Exhibits 1-3 and additional photographs at his residence and she saw him load some of those photographs into a computer. She believes that this happened on three or four occasions. Spidel paid [L.A.] and [C.R.] to take the photographs. [L.A.] believes that the photographs were first taken in July, 1998, and last taken in March, 1999.

8. [C.R.] was interviewed by Inv. Crosby in [sic] August 13, 1999. Reynolds date of birth is 11-20-82. She would testify that on one occasion Stanley Spidel took nude photographs of [L.A.] and herself at his residence. She believes the photographs were taken sometime during 1998, prior to the beginning of the school year.

9. On July 9, 1999, Inv. Crosby arrested Stanley Spidel. He was interviewed at the jail after being advised of and waiving his Miranda rights. Inv. Crosby would testify that Spidel admitted knowing [L.A.] and [C.R.]. He admitted taking photographs of both girls, but stated that they also took photographs of themselves, and that he believed [L.A.'s] boyfriend also took some photographs of her, too. He indicated that he paid them $30 to $50 each time he took pictures of them. He said that they wanted to make some money and that he suggested the photographs as a way for them to make money. He admitted taking photographs of the two girls in his kitchen and then his bedroom. These photographs are contained in Exhibits 1, 2, and 3.

10. All events occurred in Lancaster County, Nebraska.

On September 25, 2000, the trial court found Spidel guilty of two counts of visual depiction of sexually explicit conduct of a child.

On November 7, 2000, the court sentenced Spidel to 2 to 5 years' imprisonment on each count, the sentence on count II to be served consecutively to the sentence imposed on count I. The trial court ordered Spidel to pay the costs of the action and gave Spidel credit for 488 days spent in custody. The "Sex Offender Registration Notice" was executed and filed.

Spidel appeals.

### III. ASSIGNMENTS OF ERROR

On appeal, Spidel argues that the district court erred in (1) overruling his motion to suppress, (2) finding sufficient evidence to sustain the judgments against him, and (3) ordering him to serve excessive sentences.

### IV. STANDARD OF REVIEW

A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct

investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918 (2001).

■ To the extent questions of law are involved, an appellate court is obligated to reach conclusions independent of the decisions reached by the courts below. *Id.*

■ When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Heitman*, 262 Neb. 185, 629 N.W.2d 542 (2001).

## V. ANALYSIS

### 1. Motion to Suppress

On appeal, Spidel argues that the district court erred in overruling his motion to suppress. Specifically, Spidel argues that the affidavit upon which the search warrant was based was insufficient to establish probable cause.

### (a) McFarland's Reliability

Spidel argues that the affidavit in support of the search warrant fails to establish McFarland's reliability or the reliability of McFarland's information.

■ When a search warrant is obtained on the strength of information received from an informant, the affidavit in support of the issuance of the warrant must set forth facts demonstrating the basis of the informant's knowledge of criminal activity. The affidavit must also either establish the informant's credibility or set forth a police officer's independent investigation of the information supplied by the informant. *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999).

■ Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a

search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *State v. Peters, supra.*

Clearly in the instant case, the affidavit does not state that McFarland has given reliable information to the police officers in the past, that McFarland made a statement against his or her penal interest, or that Crosby's independent investigation established McFarland's reliability or the reliability of the information McFarland gave. Therefore, the question is whether McFarland is a citizen informant.

The status of citizen informant cannot attach unless the affidavit used to obtain a search warrant affirmatively sets forth the circumstances from which the existence of the status can reasonably be inferred. *State v. Peters, supra.*

When considering the sufficiency of probable cause based on information supplied by an informant, it is important to distinguish the police tipster, who acts for money, leniency, or some other selfish purpose, from the citizen informer, whose only motive is to help law officers in the suppression of crime. *State v. Detweiler,* 249 Neb. 485, 544 N.W.2d 83 (1996). Unlike the professional informant, the citizen informant is without motive to exaggerate, falsify, or distort the facts to serve his or her own ends. *Id.* A citizen informant is a citizen who purports to have been the witness of a crime who is motivated by good citizenship and acts openly in aid of law enforcement. *Id.*

In the affidavit, Crosby stated that he had a witness, McFarland, who had advised him that approximately 1 week previously he went to his employer's residence to pick up his paycheck. McFarland told Crosby that Spidel was his employer and gave Crosby Spidel's home address. The affidavit states that while at Spidel's residence, Spidel showed McFarland two photographs of two females in a "partial state of nudity." Crosby stated that McFarland was informed by Spidel that the two females were 15 years old and babysat for Spidel's daughter. McFarland also told Crosby that Spidel stated that one of the

photographs was taken with a digital camera and loaded onto Spidel's personal computer and that the other photograph Spidel showed him was a Polaroid photograph.

Clearly, the affidavit shows that McFarland's statements to Crosby were based on McFarland's personal knowledge in that McFarland personally saw the photographs in question. Moreover, there is no evidence on this record showing that McFarland had any selfish motivation for contacting the police, whether that be leniency or monetary gain. Additionally, the fact that McFarland was Spidel's employee gives credence to the view that McFarland was acting openly and was motivated by good citizenship.

### (b) Material Omissions

Spidel contends that if the affidavit supports the view that McFarland is a reliable citizen informant, it is because the affidavit contains material, false statements, and/or omissions in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

At the hearing on Spidel's motion to suppress, Crosby testified that between the time of McFarland's telephone call and his presentation of the affidavit for a search warrant, he reviewed several documents that he accessed through the police department. Crosby testified that although these documents listed an address for McFarland, the address listed did not match the address McFarland had given Crosby for himself over the telephone. Furthermore, although McFarland told Crosby that he could reach him at "corrections" because he had to go to county jail to serve a sentence for DUI or DUS, Crosby testified that he was unable to find any information suggesting that McFarland had recently been convicted of DUI or DUS in Lancaster County. Additionally, the birth date McFarland gave Crosby was a couple of days off from the birth date listed for McFarland in police records.

■ Spidel argues that the above information was material information and its omission misled the judge who issued the warrant. *Franks v. Delaware, supra,* indicates that in order to invalidate a warrant, a defendant must show both that the affiant made a deliberate falsehood or acted with reckless disregard for the truth and that the challenged material is "material," that is,

necessary to a finding of probable cause. Omissions in an affidavit used to obtain a search warrant are considered to be misleading when the facts contained in the omitted material tend to weaken or damage the inferences which can logically be drawn from the facts as stated in the affidavit. *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992), *overruled on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999).

In overruling Spidel's motion to suppress, the trial court noted Spidel's argument that the address, birth date, and criminal record contained in the police department's records did not match the information McFarland gave Crosby. The court stated:

> The fact that the address did not match is of no consequence. The address kept in the computer data bank reflects the address given at the time of a police contact. People move. The birth date is close and may be little more than a scrivener's error. The criminal record is more troubling. Crosby testified that McFarland told him he was due to begin serving jail time on a DWI or driving while suspended "something like that." Exhibit 5 shows no arrests in Lancaster County for those offenses. In addition, the Lancaster County offenses do not appear to be the type of offenses that carry a jail sentence. . . . Defendant asserts that this information, known to Crosby, should have been included in his affidavit. He further argues that if it had been, the warrant would not have been issued. I am not convinced that is true.

Essentially, in the instant case, the trial court held that the omitted information in Crosby's affidavit did not mislead the county judge who issued the warrant.

On this record, we cannot conclude that the trial court's findings in this regard were wrong. Even though Crosby omitted the fact that he could not corroborate some of the information McFarland gave him, we find, as did the trial court, that none of this information was material enough to mislead the county judge who issued the search warrant.

#### (c) Probable Cause

Having determined that McFarland was a reliable citizen informant, we address the question of whether the affidavit

established probable cause to issue the warrant. The affidavit presented to the county judge contained the following facts: (1) Spidel showed McFarland photographs of two "partially nude" 15-year-old girls, (2) the two girls had previously babysat for Spidel's daughter, and (3) one of the photographs Spidel showed McFarland was taken with a digital camera and loaded onto Spidel's computer. Furthermore, in the affidavit, Crosby stated that he had investigated other child pornography cases and that child pornographers frequently use their computers to share and exchange pornography.

■ In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" rule whereby the question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999).

Spidel argues that the affidavit was insufficient to establish probable cause, since the affidavit stated that the girls in the photographs shown by Spidel to McFarland were "partially nude." Spidel argues that it is not a crime to take or have pictures of girls 15 years of age "in a partial state of nudity" and that "[a]nyone in a swimsuit is 'partially nude.'" Brief for appellant at 14.

In pertinent part, Neb. Rev. Stat. § 28-807 (Reissue 1995) states:

> (9) Nudity shall mean the showing of the human, post-pubertal male or female genitals, pubic area, or buttocks with less than a full opaque covering, the depiction of covered male genitals in a discernibly turgid state, or the showing of the female breast with less than a full opaque covering of any portion thereof below the top of the nipple.

Clearly, § 28-807(9) sets out that female nudity can be the showing of the "female genitals, pubic area, or buttocks with less than a full opaque covering . . . or the showing of the female breast with less than a full opaque covering of any portion thereof below the top of the nipple." Therefore, although it may have been more helpful to the county court judge if Crosby had been more specific regarding the girls' nudity, we determine that the county court judge could have easily construed partial

nudity to mean that the photographs showed the girls' "genitals, pubic area, or buttocks with less than a full opaque covering" or "the breast with less than a full opaque covering of any portion thereof below the top of the nipple."

 Furthermore, a magistrate's determination of probable cause to issue a search warrant should be paid great deference by reviewing courts. *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996). After-the-fact scrutiny by courts of the sufficiency of an affidavit used to obtain a search warrant should not take the form of a de novo review. *Id.* Additionally, courts should not invalidate search warrants by interpreting affidavits in a hypertechnical rather than a commonsense manner. *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Given this standard, we conclude, as did the trial court, that the affidavit provided sufficient probable cause to issue the search warrant.

## 2. SUFFICIENCY OF EVIDENCE

On appeal, Spidel argues that the evidence is insufficient to support his convictions. Specifically, Spidel contends that the State failed to produce evidence proving every element of his offenses beyond a reasonable doubt.

As stated above, when reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Heitman*, 262 Neb. 185, 629 N.W.2d 542 (2001).

Section 28-1463.03(1) states: "It shall be unlawful for a person to knowingly make, publish, direct, create, provide, or in any manner generate any visual depiction of sexually explicit conduct which has a child as one of its participants or portrayed observers."

Sexually explicit conduct is defined in Neb. Rev. Stat. § 28-1463.02(5) (Reissue 1995) as

> (a) [r]eal or simulated intercourse, whether genital-genital, oral-genital, anal-genital, or oral-anal between persons of the same or opposite sex or between a human and an animal

or with an artificial genital; (b) real or simulated masturbation; (c) real or simulated sadomasochistic abuse; (d) erotic fondling; (e) erotic nudity; or (f) real or simulated defecation or urination for the purpose of sexual gratification or sexual stimulation of one or more of the persons involved.

At the stipulated trial, the visual depictions or photographs found in Spidel's possession were received into evidence. The question in the instant case is whether these pictures contain "erotic nudity," since the photographs do not depict anything else covered in the statute.

To prove "erotic nudity," the State must prove beyond a reasonable doubt that the "erotic nudity" was "for the purpose of real or simulated overt sexual gratification or sexual stimulation of one or more of the persons involved." § 28-1463.02(2) and (3).

Spidel argues that there is nothing in the record which supports the conclusion that Spidel took the pictures for the purpose of real or simulated overt sexual gratification or sexual stimulation.

■ A determination of whether a defendant took photographs for the purpose of real or simulated overt sexual gratification or sexual stimulation should include consideration of (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer. *State v. Saulsbury*, 243 Neb. 227, 498 N.W.2d 338 (1993).

Having viewed the photographs in evidence, we conclude that the trial court did not err in finding that the State had proved every element of Spidel's offenses beyond a reasonable doubt. In many of the photographs Spidel took, the focal point is the girls' genitalia or pubic areas. The setting of many of the visual depictions, a bedroom, is also sexually suggestive. In many of the photographs, the girls are depicted in unnatural poses. The photographs show the girls from the front fully nude and from the rear fully nude in

addition to showing the girls in such a way as to reveal their genitalia. Additionally, in some of the photographs, the visual depiction clearly suggests sexual coyness or a willingness to engage in sexual activity. This record leaves little doubt that Spidel's visual depiction of the girls was intended or designed to elicit a sexual response in the viewer, Spidel. Therefore, we conclude that the trial court did not err in finding that there was sufficient evidence to sustain Spidel's convictions.

### 3. EXCESSIVE SENTENCES

 Spidel contends that the district court erred in imposing excessive sentences. A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Dallmann*, 260 Neb. 937, 621 N.W.2d 86 (2000).

 An abuse of discretion occurs when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

Spidel was convicted of two Class III felonies. A Class III felony carries a sentence of 1 to of 20 years' imprisonment, a $25,000 fine, or both. Because Spidel's sentences were within the statutory limits, we conclude that the district court did not abuse its discretion when sentencing Spidel. Accordingly, Spidel's assignment of error regarding sentencing is without merit.

## VI. CONCLUSION

After reviewing the record, we conclude that the district court did not err in overruling Spidel's motion to suppress or in finding sufficient evidence to sustain Spidel's convictions. Additionally, the trial court did not order Spidel to serve excessive sentences. Therefore, we affirm Spidel's convictions and sentences.

AFFIRMED.