STATE of Minnesota, Respondent,

v.

Stephen Lari SCHLUTER, Appellant.

No. C3–02–48.

Court of Appeals of Minnesota.

Dec. 10, 2002.

Mike Hatch, Attorney General, and Susan Gaertner, Ramsey County Attorney, Darrell C. Hill, Assistant County Attorney, St. Paul, MN, for respondent.

Kyle D. White, St. Paul, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge, KALITOWSKI, Judge, and HALBROOKS, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Appellant Stephen Lari Schluter appeals from his conviction of felon in possession of a firearm. Because the statute as amended does not violate the prohibition against ex post facto laws, and because Schluter voluntarily consented to the search of his home, we affirm.

## FACTS

In 1986, appellant Stephen Lari Schluter pleaded guilty and was sentenced for felony possession of LSD with intent to distribute. His 21–month sentence was stayed, and he was discharged from probation in 1991.

On September 10, 2000, St. Paul police officers responding to a "shots fired call" were approached by Karen Pluff, who claimed that Schluter aimed a pistol at her and shot at her vehicle earlier that evening. She described Schluter's vehicle and gave his name, description, and address. The information was broadcast to other squad cars.

Officer Michael Conroy was the first to respond to the call and arrive at Schluter's home. He approached the front of the home while other officers went to the rear of the house to secure the premises. Through the window, Conroy observed Schluter and his wife sitting on a couch watching television. The officer entered the porch and knocked on the door. Schluter answered the door, and Conroy, fearing that Schluter might have a gun, instructed Schluter to turn around and put his hands on top of his head for a pat search. The officers handcuffed Schluter and placed him in the back seat of the squad car.

Conroy then took a couple of steps inside the doorway to talk to Schluter's wife, who was still sitting on the couch. She asked what the officers were doing there, and before Conroy could reply, she volunteered that her husband had been with her since 8:30 p.m. and had loaned his car to Derrick Schumacher. When Conroy asked her if there were any weapons in the home, she replied in the negative.

Meanwhile, Officer Degree asked Schluter, who was still in the squad car, the same question. Schluter told him that he had an SKS assault rifle and a double-barreled shotgun behind the couches, and that the officer could search for them because they were not illegal. Degree went into the home and informed Conroy about the firearms. When Conroy shared this information with Mrs. Schluter, she showed him the rifle behind the back cushion, and he later observed the double-barreled shotgun laying on the floor between the wall and the couch.

Degree obtained a consent-to-search form and returned to the squad car. Degree let Schluter out of the squad car, uncuffed him, and read the form to him. Schluter signed it. A subsequent search of the home revealed (1) some twelve-gauge shotgun ammunition, (2) an empty Uzi assault rifle box, (3) an old-style flintlock rifle, and (4) a magazine for a semi-automatic pistol. The police never found the pistol used to shoot Pluff's car.

Conroy testified that throughout the search Mrs. Schluter remained in the house. However, Mrs. Schluter testified that she was placed in a separate squad car facing her husband. She further claims that she was not fully dressed and that her request to finish dressing was denied. According to Mrs. Schluter, when her husband signed the consent-to-search form, she was allowed to go back into the house. But by that time, the police had already laid out various weapons and tagged them for inventory.

Schluter testified that he was upset that his wife was not allowed to dress. According to Schluter, officers asked him three or four times to sign the consent form, and, in the meantime, the officers were entering the home. Schluter also testified that he signed the consent form only after he was told that his wife was going to jail and that his children, who were in their rooms sleeping, would be sent to child protection.

After doing a background check, the police learned of Schluter's 1986 conviction for possession of LSD with intent to sell. As a result, he was charged with felony possession of a firearm by an ineligible person under Minn.Stat. § 624.713 (2000). Schluter was never charged with the shooting at Pluff's vehicle.

Following a court trial, Schluter was found guilty, convicted, and sentenced for felon in possession of a firearm. His 60–month sentence was stayed and he was placed on probation for 15 years. On appeal, Schluter challenges the constitutionality of section 624.713 as applied to him, and the finding of the voluntariness of the consent to search his home.

## ISSUES

I. Does Minn.Stat. § 624.713, subd. 1(b) (2000), as applied to appellant, who was convicted in 1986 of a felony controlled substance offense, violate the federal or state constitutional prohibitions against ex post facto laws?

II. Did the district court err in finding that appellant's consent to search his residence was voluntary?

## ANALYSIS

### I.

*Ex Post Facto Violation*

Schluter argues that, as applied to him, the 2000 felon-in-possession-of-a-firearm statute violates the Ex Post Facto Clause by retroactively increasing his punishment for his 1986 conviction for possession of controlled substances.

In evaluating constitutional challenges, the interpretation of statutes is a question of law. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993). Minnesota statutes are presumed constitutional and will be declared unconstitutional "only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989) (citing *City of Richfield v. Local No. 1215*, 276 N.W.2d 42, 45 (Minn.1979)).

Both the United States and Minnesota Constitutions prohibit the enactment of ex post facto laws. U.S. Const. art. I, § 10; Minn. Const. art. I, § 11. An ex post facto law "renders an act punishable in a manner in which it was not punishable when it was committed." *Starkweather v. Blair*, 245 Minn. 371, 386, 71 N.W.2d 869, 879 (1955) (footnote omitted). An ex post facto law is one that applies to events occurring before its enactment, and disadvantages the offender affected by it. *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). More

specifically, a law violates the Ex Post Facto Clause if it: (1) punishes as a crime an act which was innocent when committed, (2) increases the burden of punishment for a crime after its commission, or (3) deprives one charged with a crime of a defense that was available when it was committed. *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990).

The challenged statute, Minn.Stat. § 624.713, subd. 1(b) (2000), prohibits individuals found guilty of a "crime of violence" from possessing a firearm for ten years after their civil rights have been restored. "Crime of violence" is defined by Minn.Stat. § 624.712, subd. 5 (2000). When Schluter was convicted in 1986 of possession of controlled substances, controlled substance offenses were not defined as "crimes of violence." *See* Minn.Stat. § 624.712, subd. 5 (1986). In 1987, however, the Minnesota Legislature amended the definition of the term "crime of violence" in the challenged statute to include violations of chapter 152. 1987 Minn. Laws ch. 276, § 3. Schluter claims that applying that amendment to him based on his 1986 conviction under chapter 152 violates the prohibition against ex post facto laws because (1) the legislature failed to instruct that the statute was to have retroactive effect, (2) it increases his punishment for the 1986 crime, and (3) it significantly disadvantages him.

Whether Minn.Stat. § 624.713, subd. 1(b), as amended by Minn.Stat. § 624.712, subd. 5 (1987), can be applied to persons whose chapter 152 offenses were committed prior to the amended statute's effective date is an issue of first impression in Minnesota. However, several other state and federal courts have held that similar statutes prohibiting felons from carrying weapons may constitutionally be applied to

persons who committed the felonies prior to the statutes' effective dates.

As a preliminary matter, we do not agree with appellant's reading of and reliance on *United States v. Davis,* 936 F.2d 352 (8th Cir.1991). The challenged statute in *Davis* was a mandatory minimum-sentence enhancement. The issue in *Davis* was whether to apply the civil rights restoration laws in effect at the time of conviction or at the time of discharge. *Id.* at 356. At the time of conviction, part of Davis's punishment was that his civil rights would only be impaired until discharge. A subsequent law delayed the restoration of rights until ten years after discharge. Unlike this case, the subsequent law in *Davis* was specifically aimed at enhancing the defendant's prior sentence and therefore constituted an ex post facto law. *Id.* at 357.

While we have no controlling precedent from the Eighth Circuit, the Fourth Circuit recently confronted an analogous case. In *United States v. Mitchell,* 209 F.3d 319 (4th Cir.2000), *cert. denied,* 531 U.S. 849, 121 S.Ct. 123, 148 L.Ed.2d 78 (2000), the court held that an equivalent federal statute, which prohibited a person convicted of a misdemeanor domestic assault from possessing a firearm, applied to a person convicted of such a crime prior to the statute's effective date. Just months after Mitchell was convicted of a misdemeanor assault and battery against his wife, Congress made it illegal for a person convicted of a misdemeanor crime of domestic assault to possess a firearm. *Id.* at 321. Two years later, when Mitchell was convicted of possessing a handgun, he argued that the statute violated the Ex Post Facto Clause, as applied to him, because his prior conviction occurred before the statute's amendment. *Id.* at 322. The court determined that it was immaterial that the defendant bought the gun and was convicted of do-

mestic violence before the statute prohibiting firearm possession was enacted. *Id.* The court concluded that the illegal act was the continuing possession of the firearm, not its purchase or the defendant's previous conviction, so there was no violation of the Ex Post Facto Clauses. *Id.* at 322–23.

Other federal circuit courts have concurred with this analysis and have held that a law restricting felons from carrying firearms does not constitute punishment for prior convictions. *See United States v. Brady,* 26 F.3d 282, 291 (2d Cir.1994) (holding that because crime of felon possessing firearm occurred after effective date of statute, it was immaterial that prior felony conviction occurred before effective date of illegal possession statute); *United States v. Huss,* 7 F.3d 1444 (9th Cir.1993) (holding that Oregon law restricting felons from carrying firearms did not constitute punishment for prior crime even though prohibition did not exist when prior crime was committed, and therefore, was not ex post facto law), *overruled in part on other grounds by* 161 F.3d 556 (9th Cir.1998).

Several state courts have also addressed the constitutionality of applying later-enacted felon-in-possession laws to persons previously convicted of crimes and concluded that such laws punish the specific conduct of possession by a felon, not the underlying felony. In *State v. Peters,* 261 Neb. 416, 622 N.W.2d 918, 923 (2001), *cert. denied* 533 U.S. 952, 121 S.Ct. 2596, 150 L.Ed.2d 754 (2001), at the time of the defendant's convictions for various felonies, it was not illegal for him to possess a firearm with a barrel less than eighteen inches in length. *Id.* at 923–24. After his convictions, the statute was amended to prohibit convicted felons from possessing any deadly weapons. *Id.* The *Peters* court concluded that "such amendments are

viewed not as further punishment for the underlying felony or felonies, but as a future prohibition on a felon's conduct." *Id.* at 924. We find logical and compelling the *Peters* court's analysis that

[the amendment] punishes [the defendant] for the specific conduct of possession of a firearm by a person previously convicted of a felony. It does not punish [the defendant] for the underlying felony. [The defendant's] status as a felon makes the law applicable to him, but the legal consequences of his past conduct were not changed. Thus, the crime for which [the defendant] was punished was not for the earlier felonies, but for the new and separate crime of which the prior felony convictions are an element.

*Id.* at 925.

In the same year as *Peters,* the Washington Supreme Court considered a similar challenge to that state's unlawful-possession-of-a-firearm statute. *State v. Schmidt,* 143 Wash.2d 658, 23 P.3d 462 (2001). As in *Peters,* at the time of Schmidt's felony convictions, there was no restriction on the possession of rifles by felons. *Id.* at 464, 466. Subsequently, the unlawful-possession-of-a-firearm statute was amended to prohibit an individual convicted of a "crime of violence" from possessing any firearm. *Id.* The court held that the amendments "did not punish petitioners for past offenses nor increase their punishment for prior convictions." *Id.* at 473. Instead, the court held, the prohibition was intended to regulate ownership, possession, and control of firearms by those who, due to their previous felonies, were unfit to be entrusted with firearms. *Id.*

The Arizona Court of Appeals adopted similar reasoning in *State v. Olvera,* 191 Ariz. 75, 952 P.2d 313 (Ct.App.1997), *review denied* (Ariz. Mar. 17, 1998), concluding that "[t]he amendments are not being applied to [the defendant] retroactively; they are prospective only, punishing conduct that occurred after the effective date of the amendments." *Id.* Courts in Iowa and Oregon have reached similar conclusions. *See State v. Swartz,* 601 N.W.2d 348, 351 (Iowa 1999) (holding that application of statute banning possession of firearm by felon whose underlying felony conviction occurred prior to effective date of law did not violate prohibition against ex post facto laws); *State v. Lamb,* 110 Or. App. 146, 822 P.2d 143, 143 (1991) (holding that prohibition against defendant possessing any firearm did not constitute punishment under Ex Post Facto Clauses of Oregon or federal constitutions).

We are persuaded by the cases outlined above and conclude that the same principles govern the disposition of this case. Minn.Stat. § 624.713, subd. 1(b) does not punish as a crime an act that was innocent when committed. Schluter committed the crime of felon in possession in 2000. The illegal act was possessing the firearm in 2000, not the possession of LSD in 1986. In addition, Schluter's conviction of felon in possession does not increase the burden of punishment for his 1986 offense. Schluter's 1986 sentence, long since served, is unaffected by the change in the law; only his status due to that prior conviction has changed, making him subject to Minn.Stat. § 624.713, subd. 1(b). Thus, we conclude that application of Minn.Stat. § 624.713, subd. 1(b), to Schluter, as a result of his 1986 felony conviction, does not violate the prohibition against ex post facto laws.

## II.

*Consent to Search*

The Minnesota and United States Constitutions prohibit unreasonable searches and seizures of persons and their homes. U.S. Const. amend. IV; Minn.

Const. art. I, § 10. Warrantless searches and seizures are per se unreasonable, subject only to recognized exceptions, such as a search conducted pursuant to consent. *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn.1992); *State v. Hatton*, 389 N.W.2d 229, 232 (Minn.App.1986), *review denied* (Minn. Aug. 13, 1986). When the state relies on a defendant's consent to search, the state has the burden to prove that the consent was given freely and voluntarily. *State v. George*, 557 N.W.2d 575, 579 (Minn.1997).

On appeal, the trial court's finding of consent will not be overturned unless it is clearly erroneous. *State v. Hummel*, 483 N.W.2d 68, 73 (Minn.1992). The findings will not be found to be clearly erroneous so long as there is reasonable evidence to support them. *State v. Danh*, 516 N.W.2d 539, 544 (Minn.1994). This court defers to the trial court's ability to judge the credibility of witnesses. *State v. Larson*, 520 N.W.2d 456, 464 (Minn.App. 1994), *review denied* (Minn. Oct. 14, 1994).

Schluter acknowledges that he signed a consent-to-search form but claims that the circumstances surrounding his decision to sign the consent form demonstrate that his consent was involuntary. According to Schluter, prior to agreeing to sign the consent-to-search form, he was continuously asked if he would consent to the search, and each time he refused. He claims that he was upset that his wife was brought outside, partially dressed, and placed in another squad car well within his range of vision. Schluter further claims that he agreed to sign the form only after he was told by police that (1) his wife was having an affair, (2) both he and his wife would be arrested, and (3) the children would be taken by child protective services. Schluter claims that under these circumstances, he felt coerced into consenting to the search.

The record reflects that Schluter admitted signing the consent-to-search form because he believed that he did not have anything illegal to hide. The district court found that Schluter's claim that he consented to the search out of concern for his wife and children was not credible. Furthermore, the court found that

[h]e signed the consent to search because he had no fear of police finding a handgun and money he believed Karen Pluff had told the police about in connection with the earlier "shots fired" call. The defendant, when he learned the police wanted to search for those items, felt he had been given a "legitimate reason" for the search and consented, confident they would not find what they were looking for.

On these facts, the trial court properly found that Schluter gave his consent knowingly and voluntarily. We find no error in this finding. Because the district court's finding that consent was voluntary is supported by reasonable evidence, it is not clearly erroneous, and we affirm.

## DECISION

The district court correctly concluded that the amendment of Minnesota's felon-in possession-of-a-firearm statute to include controlled substance felonies could be applied to Schluter without violating the Ex Post Facto Clauses of the Minnesota and United States Constitutions. The court's finding that Schluter voluntarily consented to the search of his home was not clearly erroneous.

**Affirmed.**