STATE OF NEBRASKA, APPELLEE, V.
DIANN M. MANNING, APPELLANT.
638 N.W.2d 231

Filed January 25, 2002.   No. S-01-130.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Don Stenberg, Attorney General, and David K. Arterburn for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Following a bench trial, Diann M. Manning was convicted of possession of a controlled substance, in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2000). Manning claims that evidence obtained during a search of her purse while police officers were executing an unrelated search warrant on her house was inadmissible and that the trial court erred in overruling her motions to suppress.

## SCOPE OF REVIEW

■ A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918 (2001).

■ Regarding questions of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Franco*, 257 Neb. 15, 594 N.W.2d 633 (1999).

## FACTS

On February 22, 2000, Sgt. Robert Falldorf served a warrant on Manning's residence in Grand Island, Nebraska. The police were searching for stolen property as part of an investigation of which Manning was not the subject.

When the police officers arrived at Manning's residence, only her son was present, but Manning arrived while the search was in progress. Officer Tony Keiper then asked Manning about her use of methamphetamine, and Manning replied that she had quit using the drug months ago. When Manning later asked if she could leave with her son, Keiper told her that she was free to leave, but Keiper asked Manning's permission to search her vehicle before she left. Manning gave Keiper permission to search the vehicle but told Keiper to retrieve her purse from the vehicle because drugs were located in the purse. Keiper then searched the purse in Manning's presence and found three separate quantities of what was later determined to be methamphetamine.

Manning was charged with possession of a controlled substance. Prior to trial, she filed three motions to suppress. One motion alleged that her statements were not voluntarily made. The second motion alleged that the "stop" was not made upon a reasonable and articulable suspicion. The third moved to suppress "the fruits of the arrest and search and seizure made in this case for the reason that the arrest and search and seizure were

made without probable cause or without benefit of a warrant . . . ." The trial court treated all three motions as one motion at a hearing held on September 20, 2000.

At the hearing, the State and Manning entered into an oral stipulation that the only reason the officers were at the residence was to serve and execute the search warrant. The parties stipulated that Manning gave consent to the search of her purse, which was in her vehicle parked in the driveway, and that the purse was retrieved from the vehicle and searched in Manning's presence.

Two days after the hearing, the State moved to reopen the evidence. The State claimed that prior to the suppression hearing, it was unaware that the basis for the motion to suppress was that the search warrant was invalid. The State's motion was granted. The State then offered a written stipulation similar to the oral stipulation and called Falldorf to testify about his contact with one of the informants who provided information used to obtain the warrant. Falldorf's testimony was offered for the limited purpose of determining whether there were misleading facts omitted from the affidavit. Falldorf also testified that he was present when the warrant was served.

The trial court overruled the motions to suppress and made the following findings of fact: On February 22, 2000, a search warrant was issued pursuant to an affidavit and was served on Manning's residence in Grand Island. While the officers were searching the residence, Manning arrived and spoke with officers. According to the stipulated facts, Manning consented to a search of her purse, which was in her vehicle parked in the driveway. Manning was not in custody or under arrest at the time.

The trial court considered three issues: (1) whether the search warrant was valid; (2) if the warrant was not valid, whether the officers acted in good faith; and (3) if the warrant was not valid, whether the consent given by Manning to search her purse was an intervening circumstance sufficient to attenuate the connection between the execution of the search warrant and the seizure of the drugs found in Manning's purse.

The trial court noted that an affidavit in support of a search warrant must contain sufficient information to establish the reliability of the informant upon whose information the affidavit relied. Among the ways in which the reliability of an informant

may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918 (2001).

Police had received information concerning stolen property from the victim of a residential burglary, and the victim's information eventually led police to Manning's home. The trial court found that the victim was a citizen informant. The victim relayed information from a second individual regarding the identity and location of the perpetrator. Although the victim's reliability was established, she did not supply any information to establish the reliability of the second individual. Another informant, who shared a cellblock at the Hall County jail with a suspect in the burglary, informed the police of a possible recipient of the stolen property.

The trial court concluded that on its face, the affidavit was insufficient regarding the information provided by the cellmate. The affidavit did not state that the cellmate had given reliable information in the past or that he was a citizen informant, and no information provided by the cellmate was independently verified by Falldorf. Furthermore, certain information given by the cellmate concerning the location of the stolen property had been found to be false. Although Falldorf testified in court that he had received reliable information from the cellmate in the past, the affidavit did not address the cellmate's reliability.

In considering whether there was a good faith exception based upon *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), the trial court found that it was unreasonable for the officer to rely on the affidavit because it did not contain any information as to the reliability of the only two individuals who had provided information about the location of the stolen property—the second individual and the cellmate.

The trial court then considered whether exceptions to the exclusion of evidence derived from an illegal warrant should be applied even though Manning consented to the search. The trial

court found that Manning had returned home in the midst of a search and engaged in voluntary conversations with the officers. The officers asked if they could search Manning's purse, which was located in a vehicle that was not included in the search warrant. Manning voluntarily consented to the request, and the trial court concluded that her consent to a search unrelated to the warrant was a sufficient intervening circumstance to purge the taint of the illegal warrant. The trial court overruled the motions to suppress.

At the bench trial, Manning renewed her objection to the evidence obtained when Keiper searched her purse. The objection was overruled, and Manning was found guilty of possession of a controlled substance. She was placed on probation for 24 months.

## ASSIGNMENT OF ERROR

Manning's only assignment of error is that the trial court erred in overruling her motions to suppress.

## ANALYSIS

In determining whether the trial court erred in overruling her motions to suppress, Manning requests that this court adopt a de novo standard of review in "taint determinations," brief for appellant at 8, which is the same standard applied when an appellate court reviews determinations of reasonable suspicion and probable cause. Manning admits, however, that taint determinations are not included in probable cause and reasonable suspicion determinations.

A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918 (2001). In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id.*

Manning claims that Nebraska law suggests that taint determinations have been reviewed under a de novo standard since 1996. However, in the cases upon which Manning relies, a de novo standard of review was used only to determine whether

there was probable cause or reasonable suspicion. See, *State v. Fitch*, 255 Neb. 108, 582 N.W.2d 342 (1998) (clear error in applying good faith exception; lower court did not reach attenuation question); *State v. Merrill*, 252 Neb. 510, 563 N.W.2d 340 (1997) (no legitimate expectation of privacy); *State v. Runge*, 8 Neb. App. 715, 601 N.W.2d 554 (1999) (determination of probable cause reviewed de novo); *State v. Mays*, 6 Neb. App. 855, 578 N.W.2d 453 (1998) (police lacked reasonable suspicion for stop), *overruled on other grounds, State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000).

■ In considering a trial court's ruling on a motion to suppress evidence obtained by a search, an appellate court first determines whether there is an initial illegality involved in the search. If such determination involves a consideration of whether an officer acted with reasonable suspicion or probable cause, that determination will be reviewed de novo. See, *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996). If there is an initial determination that the search was illegal, then the court must determine whether the evidence that the defendant seeks to suppress is sufficiently attenuated from the illegal search. The appellate court reviews this taint analysis for clear error, which is the standard applied in all other rulings on motions to suppress, apart from determinations of probable cause and reasonable suspicion. See *id.*

The trial court determined that Manning's consent was sufficiently attenuated from the invalid search warrant and therefore overruled the motions to suppress. Manning claims this was error because the search of her residence was illegal and her consent to the search of her purse was the fruit of that illegality.

Our analysis of whether the search of Manning's purse was sufficiently attenuated from the illegal search begins with *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). In *Wong Sun*, the Court stated:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to

which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).

371 U.S. at 487-88.

In *State v. Abdouch*, 230 Neb. 929, 434 N.W.2d 317 (1989), we found that the evidence was tainted. We stated:

"In the typical case in which the defendant was present when incriminating evidence was found in an illegal search or in which the defendant was confronted by the police with evidence they had illegally seized, it is apparent that there has been an 'exploitation of that illegality' when the police subsequently question the defendant about that evidence or the crime to which it relates. This is because 'the realization that the "cat is out of the bag" plays a significant role in encouraging the suspect to speak.' . . ."

*Id.* at 945, 434 N.W.2d at 327.

The case at bar does not involve a confession obtained by police after confronting Manning with evidence of the crime for which she was subsequently convicted. The search for stolen property was completely unrelated to the search of Manning's purse. Manning was not the subject of the original investigation, and she was not confronted with any illegally obtained evidence against her. No evidence indicated that she was threatened or coerced in any manner, and it was stipulated that Manning consented to the search of her purse.

Manning argues that the only reason the officers were at her residence was to serve the illegal search warrant and that if the officers had not been there, her purse would not have been searched. She argues that the officers took advantage of a bad warrant to convince her to consent. Her argument that officers exploited the initial illegality is based only on the premise that the officers would not have asked to search her purse had they not been at her residence during the invalid search. This "but for" test was rejected in both *Wong Sun* and *Brown v. Illinois*, 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975).

At the suppression hearing, the written stipulation indicated that Manning was free to leave. There was no claim that Manning's consent to the search was involuntary. In fact, the

record indicates that her permission to search the purse was voluntary. The initial illegality was not exploited in obtaining Manning's consent to search her vehicle and her purse. Thus, the trial court was not clearly erroneous in concluding that the search of Manning's purse was sufficiently attenuated from the illegal search due to her voluntary consent.

## CONCLUSION

The trial court did not err in overruling Manning's motions to suppress. The judgment of conviction and sentence are affirmed.

AFFIRMED.