IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. SAY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DOH SAY, APPELLANT.

Filed April 14, 2020.    No. A-19-030.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Kristi J. Egger for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, RIEDMANN, and WELCH, Judges.

RIEDMANN, Judge.

INTRODUCTION

Doh Say appeals from his conviction and sentence in the district court for Lancaster County for driving under the influence (DUI), greater than .15, third offense. Say argues that the court erred in overruling his motion to suppress the results of his chemical breath test, that there was insufficient evidence to convict him of DUI, and that he received an excessive sentence. We affirm.

BACKGROUND

On May 27, 2017, Say was stopped by a Lincoln police officer for making an improper turn. After stopping Say, the officer noticed a strong odor of alcohol emanating from his vehicle, and Say was slurring his words. The officer conducted a preliminary breath test, which revealed Say had a blood alcohol content (BAC) of .331. He was transferred to the county jail, where he was subjected to a chemical breath test, which was taken on May 28, and revealed he had 0.264

- 1 -

grams of alcohol per 210 liters of breath. He was subsequently arrested for aggravated third offense DUI.

Say was initially charged by complaint in the county court for Lancaster County in May 2017 with one count of DUI greater than 0.15 with two prior convictions, in violation of Neb. Rev. Stat. § 60,6,196 (Reissue 2010) and Neb. Rev. Stat. § 60,6,197.03(6) (Cum. Supp. 2018), a Class IIIA felony. He was bound over to the district court, where he was charged by information with the same offense.

In June 2018, Say filed a motion to suppress the results of his chemical breath test. In his motion, Say alleged that the breath test was not performed according to the methods approved by the Nebraska Department of Health and Human Services (DHHS). Specifically, Say asserted that the wet bath simulator solutions which were used to test the DataMaster, the machine used to test his BAC, were accompanied by faulty certificates of analysis. The initial certificates of analysis were signed by Alma Palmer, who stated that she tested and supplied the solutions provided. However, amended certificates of analysis were sent to the Lincoln Police in early May 2018, which stated Colby Hale, and not Palmer, was the individual who tested the solutions. Thus, Say contended that the wet bath simulator solutions used to test the DataMaster were not accompanied by valid certificates of analysis, as required under 177 Neb. Admin. Code, ch. 1, § 008.04A (2016).

A hearing was held on Say's motion to suppress in August 2018. At the hearing, the State adduced testimony from Kayla Puhrmann, a maintenance officer for the Lincoln Police Department who held a permit to operate the DataMaster used to test Say's BAC. Puhrmann testified that the DataMaster was checked on May 25, 2017, and June 21, 2017, and was working correctly on both occasions. As a result of those tests, Puhrmann opined that the DataMaster was working properly when it was used to test Say's BAC. She testified that certificates of analysis are sent from the company which provides the wet bath simulator solutions. Puhrmann indicated that the amended certificates of analysis were sent after the solutions were received by the police department. The only difference between the original certificates of analysis and the amended certificates of analysis was that the original certificates were signed by Palmer, and the amended certificates were signed by Hale.

Puhrmann opined that the fact that a different tester signed the amended certificates of analysis did not change her opinion that the DataMaster was working properly when it was used to test Say's BAC. She indicated that the same simulator solutions were used across all four DataMaster machines operated by the Lincoln Police Department, and all tested within the acceptable range of the target value of the solution. Additionally, the DataMaster was tested against its own internal settings, and again tested within the appropriate range of error. Puhrmann admitted on cross-examination that part of the maintenance of the DataMaster machines was relying on the wet bath simulator solutions to test the internal settings of the machines.

Following the hearing, the district court overruled Say's motion to suppress. The court determined that the defect in the initial certificates of analysis was a technique, as defined by 177 Neb. Admin. Code, ch. 1, § 001.21 (2016), and not a method; therefore, the defect affected the weight and credibility of the test, and not its admissibility. The court found that because there was sufficient evidence to demonstrate that the DataMaster was working properly when it tested Say's BAC the results were admissible.

A bench trial was held in October 2018. At trial, the State adduced testimony from Grant Powell, a Lincoln Police officer in charge of maintaining the DataMaster machines. Powell described how the DataMaster tested a subject's breath. He explained that the DataMaster undergoes regularly scheduled testing, which is required under Title 177 of the Nebraska Administrative Code, and described the testing and when it was performed. After completing the second round of tests of the Datamasters, Powell was made aware that certificates of analysis which were initially sent with the solutions were not signed by the person who tested the solution. Powell received amended certificates of analysis in early May 2018. He confirmed that the only difference between the certificates of analysis was the name of the tester and stated that difference did not alter his opinion that the DataMaster was working properly when it was used to test Say's BAC on May 28, 2017.

Following the testimony, the court found Say guilty of operating a motor vehicle while under the influence with a BAC of 0.15 of one gram or more by weight of alcohol per 210 liters on his breath. The court received evidence indicating that Say had two prior DUI convictions, and found that the present offense was his third DUI offense. The district court sentenced Say to 365 days in jail, 18 months of postrelease supervision, and suspended his license for 15 years. Say timely appealed.

ASSIGNMENTS OF ERROR

Say assigns, restated, that the district court erred in (1) overruling his motion to suppress, (2) determining there was sufficient evidence to find him guilty of DUI, and (3) imposing an excessive sentence.

STANDARD OF REVIEW

A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, will be upheld unless its findings of fact are clearly erroneous. *State v. Manning*, 263 Neb. 61, 638 N.W.2d 231 (2002).

The meaning and interpretation of statutes and regulations are questions of law which an appellate court resolves independently of the lower court's conclusion. *State v. McIntyre*, 290 Neb. 1021, 863 N.W.2d 471 (2015).

In reviewing a sufficiency of the evidence claim, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Mueller*, 301 Neb. 778, 920 N.W.2d 424 (2018).

ANALYSIS

*Motion to Suppress*.

Say argues that the district court erred in overruling his motion to suppress his chemical breath test results. He specifically argues that the State failed to establish the foundational requirement that the chemical breath test was conducted under the methods required by DHHS.

The four foundational elements which the State must establish for the admissibility of a breath test in a DUI prosecution are as follows: (1) that the testing device was working properly at the time of the testing, (2) that the person administering the test was qualified and held a valid permit, (3) that the test was properly conducted under the methods stated by the DHHS, and (4) that all other statutes were satisfied. *State v. Jasa*, 297 Neb. 822, 901 N.W.2d 315 (2017). In his motion to suppress, and on appeal, Say contends that the third foundational element was not met.

Title 177 of the Nebraska Administrative Code is the governing DHHS regulation on this issue. Say asserts that the State did not comply with 177 Neb. Admin. Code, ch. 1, § 008.04 (2016). Section 008.04A states that the wet bath simulator solution or dry gas standard used to calibrate the DataMaster must be accompanied by a certificate of analysis, which must include, among other things, the name of the tester of the solution, and a signature of the responsible individual for the solution. Say argues that because, at the time of his breath test, the certificates of analysis erroneously identified the individual who tested the simulator solutions, the breath test results are inadmissible. We disagree.

The Nebraska Supreme Court recently addressed whether a defendant was entitled to a new trial on the basis of newly discovered evidence which involved similarly defective certificates of analysis. See *State v. Krannawitter*, 305 Neb. 66, 939 N.W.2d 335 (2020). In *Krannawitter*, the appellant was convicted of aggravated DUI, third offense. *Id*. Following her trial, it was discovered that although the original certificates of analysis which accompanied the wet bath simulator solution used in the DataMaster to test her BAC were signed by Palmer, amended certificates received after trial verified Hale as the tester. *Id*. Appellant filed a motion for a new trial based on the defective certificates of analysis, which was denied by the district court. *Id*. The district court found that the amended certificates of analysis were not newly discovered evidence and that even if they were, the defect in the original certificates would not have rendered the breath test inadmissible. *Id*. Krannawitter appealed, and the Supreme Court affirmed. *Id*.

In reaching its decision, the *Krannawitter* court determined that the district court erred in ruling that the amended certificates were not newly discovered evidence; however, it affirmed the denial of the motion for new trial because had the certificates been offered at trial, the result of that trial would not have been substantially different. *Id*. In reaching its decision, it addressed the same issue that is presently before this court: did the defect in the original certificates render the chemical breath test results inadmissible for lack of foundation? It concluded that it did not, stating:

> In addition to contributing to the evidence showing that the original certificates were incorrect, the amended certificates were independent foundation evidence supporting the admission of those results. And in addition to even these certificates, there was other

evidence presented at the hearing on the amended motion for new trial that supported the admissibility of the results.

*Id*. at 77, 939 N.W.2d at 344.

Although the procedural posture of the case before us differs from that in *Krannawitter*, the question is the same. Accordingly, we follow the Supreme Court's analysis. In the present case, the amended certificates of analysis were received into evidence at both the hearing on the motion to suppress and at trial. They provided independent foundational evidence which supported the admission of Say's chemical breath test results. Additionally, there was other evidence supporting the admissibility of Say's breath test consisting of Powell's testimony that the DataMaster was tested on May 25, 2017, and again on June 21, and determined to be working properly and that all four DataMaster machines operated by the Lincoln Police Department tested within the acceptable margin of error. Therefore, the deficiency in the original certificates of analysis did not render Say's chemical breath test results inadmissible and the court did not err in refusing to suppress them.

*Sufficiency of Evidence.*

Say argues that the district court erred in finding that there was sufficient evidence to find him guilty of DUI. We disagree.

Say's argument is premised on his previous assertion that the results of his chemical breath test should have been suppressed. As stated above, however, the district court properly admitted the results into evidence. It revealed that he had a BAC of 0.264. Say was convicted under § 60-6,196 and § 60-6,197.03(6) which makes it unlawful for a person to operate a motor vehicle when the person has a concentration of .08 of 1 gram or more by weight of alcohol per 210 liters of his or her breath. Because Say's breath test revealed he had a BAC of 0.264, there was sufficient evidence to convict him of DUI, greater than 0.15. The evidence further supports that Say had two prior DUI convictions. Thus, there is sufficient evidence demonstrating that the present offense was Say's third DUI conviction.

*Excessive Sentence.*

Finally, Say argues that the district court abused its discretion and imposed an excessive sentence. We disagree.

An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result. *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017). When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). However, the sentencing court is not limited to any mathematically applied set of factors. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and

includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Say was convicted of DUI, more than 0.15, with two prior convictions, in violation of § 60-6,196 and § 60-197.03(6), a Class IIIA felony. Class IIIA felonies carry a maximum sentence of 3 years' imprisonment and 18 months' postrelease supervision, there is not a minimum sentence; however, if a term of imprisonment is imposed, 9 months' postrelease supervision must also be imposed. Neb. Rev. Stat. § 28-105 (Reissue 2016). Therefore, Say's sentence of 365 days' imprisonment and 18 months' postrelease supervision was within the statutory guidelines for his offense. Nevertheless, Say asserts that his sentence was excessive because the district court did not consider his hardworking nature, social background, or the length of time between his first two DUIs and his present offense.

The record indicates that the district court did not abuse its discretion in sentencing Say. Prior to announcing its sentence, the court noted that it considered the information contained in the presentence investigation report (PSR), as well as the circumstances of his offense, his character and condition, and his prior offenses. Say's PSR indicates that he has worked at the same job since 2010, and that he leaves 2 hours early for his job to accommodate for travel. Thus, the court was aware of Say's employment and his dedication to his job.

Further, Say's PSR details his social background. According to his PSR, Say is married and has two children, aged 13 and 6. Moreover, the PSR details his relationship with his friends, whom Say states do not use alcohol or drugs. The PSR also notes that he spent 20 years in a refugee camp prior to moving to the United States. This information reflects Say's social background, and therefore was properly considered by the court prior to imposing its sentence.

Finally, the PSR details Say's criminal history. He received his first DUI offense in 2010, although he was convicted in 2011. Following this conviction, he initially received probation; however, his probation was revoked and he spent 7 days in jail. His second DUI conviction occurred in 2011, and he was sentenced to 30 days of house arrest. In addition to his two previous DUI convictions, Say has received citations for disturbing the peace and hunting during closed season. Thus, the district court was aware of the gap between Say's first two DUI convictions, and the present offense, which occurred in 2017.

Based upon our review of the record, the district court took the appropriate factors into consideration in sentencing Say. It cannot be said that the court abused its discretion in sentencing Say to 365 days' imprisonment, 18 months' postrelease supervision, and suspending his license for 15 years.

CONCLUSION

The district court did not err in admitting the results of Say's chemical breath test; therefore, the evidence was sufficient to support his conviction. Further, the court did not impose an excessive sentence on Say. Accordingly, we affirm his conviction and sentence.

AFFIRMED.