IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. JUDDS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

JOHN R. JUDDS, APPELLANT.


Filed June 23, 2020.    No. A-19-763.


Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Brad Roth, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.


PIRTLE, BISHOP, and WELCH, Judges.

PIRTLE, Judge.

## INTRODUCTION

John R. Judds appeals from his conviction for driving under the influence (DUI), greater than .15, third offense, in the district court for Lancaster County. Judds challenges the denial of his motion to suppress the results of his breath test and the sufficiency of the evidence to support his conviction. Based on the reasons that follow, we affirm.

## BACKGROUND

On March 12, 2018, Lincoln Police Officer Andrew Arnold arrested Judds for DUI. Arnold brought Judds to jail, where Judds submitted to a chemical test of his breath on a DataMaster machine. The DataMaster is an approved testing device for analyzing breath samples for alcohol

- 1 -

content. See 177 Neb. Admin. Code, ch. 1, § 008.01A (2016). The breath test showed a concentration of 0.182 grams of alcohol per 210 liters of breath.

On July 19, 2018, the State filed an information charging Judds with DUI, greater than 0.15, with two prior convictions, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010) and Neb. Rev. Stat. § 60-6,197.03(6) (Cum. Supp. 2018), a Class IIIA felony.

Judds filed a motion to suppress his breath test results and alleged, among other claims, that his breath test results should be excluded from trial because the wet bath simulator solutions used to maintain and calibrate the DataMaster were accompanied by false and inaccurate certificates of analysis. Section 008.04 of 177 Neb. Admin. Code, ch. 1, requires testing device calibration and verification be done by either dry gas standards or wet bath simulator solutions. The simulator solutions must be accompanied by a certificate of analysis by the manufacturer which must include, among other information, the name of the person who tested the solution. 177 Neb. Admin. Code, ch. 1, § 008.04A (2016). In the present case, the initial certificates of analysis were signed by Alma Palmer, who stated that she tested and supplied the solutions provided. However, amended certificates of analysis were sent to the Lincoln Police in May 2018, which stated that Colby Hale, and not Palmer, was the individual who tested the solutions. Therefore, Judds contended that the wet bath simulation solutions used to test the DataMaster were not accompanied by valid certificates of analysis, as required under 177 Neb. Admin. Code, ch. 1, § 008.04A (2016), and thus, the breath test results lacked foundation and were inadmissible. Judds also alleged that he had the right to confront any witnesses who signed the certificates of analysis.

A hearing was held on Judds' motion to suppress. The parties stipulated that Arnold who administered Judds' breath test had a valid Class B permit which authorized him to administer Judds' breath test on a DataMaster machine, and that he followed the checklist technique required by the Department of Health and Human Services (DHHS) in conducting the test.

The State called Grant Powell, a maintenance officer with the Lincoln Police Department whose duties included performing calibration checks on the DataMaster machines in accordance with Title 177. Powell testified that the DataMaster machines must have a maintenance check every 40 days. Specifically, pursuant to 177 Neb. Admin. Code, ch. 1, §§ 009 and 010, the DataMaster must be calibrated by the maintenance officer every 40 days and within 40 days prior to an analysis. Powell testified that the DataMaster used to test Judds' breath was checked using wet bath simulator solutions on February 14 and March 20, 2018. He testified that he received results that were within the 5-percent margin of error allowed under Title 177 during those checks which indicated that the DataMaster was working correctly on both of those dates. As a result of those tests, Powell opined that the DataMaster was working properly when it was used to test Judds' breath on March 12.

The evidence showed that the simulator solutions used for the maintenance checks are manufactured and supplied by a company called RepCo Marketing and the solutions come with a certificate of analysis, a document that accompanies each bottle certifying that the solution contains a certain value. Powell testified that in April 2018, he was made aware of an issue with the certificates of analysis and in May, he received amended certificates of analysis from RepCo Marketing involving the simulator solutions at issue. Powell explained that the defect with the original certificate was that it inaccurately indicated that the simulator solution was tested and

prepared by Palmer of RepCo Marketing, when in fact it was Hale of RepCo Marketing who tested the solution. He testified that the only difference between the original certificates of analysis and the amended certificates was the name of the person that did the initial testing at RepCo Marketing. He also testified that the amended certificates of analysis were not prepared specifically for Judds' case or for any certain case.

Powell testified that the defect in the original certificate of analysis did not affect the accuracy of the simulator solution it accompanied. He further testified that he was not concerned that the simulator solutions were not at the targeted values indicated because the solutions are tested at RepCo Marketing and that testing was confirmed by an outside company, Data Resources. Powell also testified that when he received the solutions, he used them across all four DataMaster machines operated by the Lincoln Police Department, and all tested within the acceptable range of the target value of the solution.

Powell testified that despite the defect in the original certificates, he had no concerns that the DataMaster was not working correctly or giving incorrect results. Powell further opined that the fact that a different tester signed the amended certificates of analysis did not change his opinion that the DataMaster was working properly when it was used to test Judds' breath.

Following the hearing, the court overruled Judds' motion to suppress. A stipulated bench trial followed. The State's evidence consisted of Judds' DataMaster breath test results; a copy of Title 177; the maintenance and calibration logs for the DataMaster machine in question; the original certificate of analysis signed by Palmer; the amended certificate of analysis signed by Hale; the transcript of Powell's testimony from another case that was admitted into evidence at the motion to suppress; the video from the traffic stop of Judds' vehicle; a police report from the case; the Checklist Technique form that was used in administering Judds' breath test; and a written trial stipulation. Judds objected to the State's evidence related to the breath test results based on grounds set forth in his motion to suppress, specifically, that the breath test was inadmissible due to lack of compliance with Title 177 and that his confrontation rights were violated. The court received all of the State's evidence, subject to Judds' objections.

The trial court subsequently found Judds guilty of DUI, greater than 0.15. The court received evidence that Judds had two prior DUI convictions and found that this conviction was a third DUI offense. The trial court sentenced him to 4 years' probation and a 7-year license revocation.

## ASSIGNMENTS OF ERROR

Restated, Judds assigns that the trial court erred in overruling his motion to suppress and finding him guilty of DUI, greater than .15, third offense.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, will be upheld unless its findings of fact are clearly erroneous. *State v. Manning*, 263 Neb. 61, 638 N.W.2d 231 (2002).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Lee, supra.*

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hibler*, 302 Neb. 325, 923 N.W.2d 398 (2019).

ANALYSIS

*Motion to Suppress Breath Test Results*.

Judds assigns that the trial court erred in overruling his motion to suppress the breath test results on three grounds: lack of foundation, his right to confront witnesses, and hearsay.

Judds first argues that the breath test results lacked foundation because the certificates of analysis accompanying the simulator solutions did not comply with Title 177, which contains DHHS' regulations for the maintenance of breath testing devices.

The four foundational elements which the State must establish as foundation for the admissibility of a breath test in a DUI prosecution are as follows: (1) that the testing device was working properly at the time of the testing, (2) that the person administering the test was qualified and held a valid permit, (3) that the test was properly conducted under the methods stated by DHHS, and (4) that all other statutes were satisfied. *State v. Montoya*, 305 Neb. 581, 941 N.W.2d 474 (2020). Judds contends that the third foundational element was not met, arguing that the breath test was not properly conducted pursuant to Title 177.

Neb. Rev. Stat. § 60-6,201(3) (2010) provides that "[t]o be considered valid," breath tests "shall be performed according to methods approved by [DHHS]." The rules and regulations of DHHS relating to the analysis for the determination of alcohol content in blood or breath are contained in Title 177, chapter 1, of the Nebraska Administrative Code.

Judds asserts that the State did not comply with 177 Neb. Admin. Code, ch. 1, § 008.04 (2016), which states that the wet bath simulator solution used to calibrate the DataMaster must be accompanied by a certificate of analysis, which must include, among other things, the name of the person who tested the solution. Judds argues that because, at the time of his breath test, the original certificates of analysis erroneously identified the individual who tested the simulator solutions, and the amended certificates did not accompany the simulator solution, the breath test results are inadmissible.

The Nebraska Supreme Court has recently addressed the same issue before us now and held that similarly defective certificates of analysis did not render the breath test results inadmissible for lack of foundation. See *State v. Montoya, supra*. In *Montoya*, the defendant argued

that the court should have granted his motion to suppress the DataMaster breath test results because the certificates of analysis accompanying the solutions originally did not contain the name of the person who actually tested them. There were amended certificates presented that identified the individual who actually tested the simulator solution. The Supreme Court found no error in the trial court's determination that the foundational elements for the admission of defendant's breath test results had been met. It stated that although the name listed for the person who tested the solutions was originally incorrect, the certificates of analysis listed the correct name of the person who tested them by the time the test results were admitted at trial. The Supreme Court noted that there is no reference to "amended certificates" in Title 177, but that did not mean they are impermissible. It stated that the solution utilized in calibrating the DataMaster within 40 days prior to the test of defendant's breath sample had at all times been accompanied by certificates of analysis containing all the categories of information required under Title 177. The Supreme Court further stated that there is nothing in Title 177 suggesting that clerical errors in certificates of analysis cannot be corrected. The *Montoya* court held that amended certificates of analysis to correct clerical errors provide satisfactory evidence that the inspections of an approved breath testing device complied with the requirements of Title 177.

Based on *Montoya*, we conclude that the certificates of analysis accompanying the simulator solutions complied with Title 177. Therefore, Judds' breath test results were not inadmissible based on foundation.

Judds next argues that the trial court erred in overruling his motion to suppress based on his contention that the certificates of analysis violated his confrontation rights. He contends that the certificates are out-of-court testimonial statements and are inadmissible based on the Confrontation Clause.

The Confrontation Clause provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. See U.S. Const. amend. VI. Only testimonial statements cause the declarant to be a "witness" within the meaning of the Confrontation Clause. See *State v. Montoya*, 305 Neb. 581, 941 N.W.2d 474 (2020). If the statements are nontestimonial, then no further Confrontation Clause analysis is required. *State v. Montoya, supra.*

The Supreme Court also addressed and rejected Judds' claim that his confrontation rights were violated in *State v. Montoya, supra*. The Supreme Court held that neither the original certificates nor amended certificates are testimonial for purposes of the Confrontation Clause. It stated that in either case, the certificates are prepared in a routine manner without regard to any particular defendant. The Supreme Court noted that there was no indication either on the face of the amended certificates or in the testimony at trial that the amended certificates at issue were prepared for a particular criminal proceeding. The same is true in the present case. Accordingly, the admission of the original certificates and amended certificates did not violate the Confrontation Clause.

Judds next assigns that the trial court erred in overruling his motion to suppress based on hearsay. He argues that the certificates of analysis were inadmissible hearsay and did not fall under the business record exception to the hearsay rule.

As the State contends, Judds' hearsay claim was not raised at trial and, therefore, is not properly before this court. At trial, Judds' counsel renewed his objection to the evidence and testimony related to the breath test results based on grounds set forth in his motion to suppress. He indicated that those grounds included the inadmissibility of the breath test results due to the lack of compliance with Title 177 and Judds' right to confront certain witnesses. The court followed up to clarify that those were the only objections being raised, and Judds' counsel confirmed that "the objections go to the paragraphs [in the motion to suppress] regarding the DataMaster, the compliance with Title 177, the right to confront the various witnesses who were involved with the maintenance of the DataMaster." There was no hearsay objection raised at trial. On appeal, a defendant may not assert a different ground for his or her objection than was offered at trial. *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

In addition, even if Judds had objected to the admission of the breath test results based on hearsay at the motion to suppress stage, he did not preserve the hearsay objection for appellate review. Where there has been a pretrial ruling regarding the admissibility of evidence, a party must make a timely and specific objection to the evidence when it is offered at trial in order to preserve any error for appellate review. *State v. Goynes*, 303 Neb. 129, 927 N.W.2d 346 (2019), *cert. denied* ___ U.S. ___, 140 S. Ct. 545, 205 L. Ed. 2d 345. As previously stated, Judds did not make a hearsay objection at trial. Accordingly, Judds has waived appellate review regarding this claim.

*Sufficiency of Evidence.*

Finally, Judds argues that the district court erred in finding that there was sufficient evidence to find him guilty of DUI. His challenge to the sufficiency of the evidence depends upon the success of his argument that the breath test results were inadmissible. Judds was charged with DUI of alcohol when he had a concentration of .15 of 1 gram or more of weight of alcohol per 210 liters of his breath under §§ 60-6,196 and 60-6,197.03(6). Judds' breath test results showed that he had 0.182 of 1 gram of alcohol per 210 liters of his breath. Having concluded that the breath test results were admissible, the evidence was sufficient to convict him of DUI, greater than .15. The evidence further supports that Judds had two prior DUI convictions. Thus, there is sufficient evidence demonstrating that the present offense was Judds' third DUI conviction.

## CONCLUSION

The district court did not err in admitting the results of Judds' breath test and therefore, the evidence was sufficient to support his conviction. Accordingly, we affirm his conviction and sentence.

AFFIRMED.